### In re Renee F. LABONTE, Debtor.

### No. 05–11112–MWV.

United States Bankruptcy Court,
D. New Hampshire.

July 26, 2005.

Joel Jay Rogge, Esq., Ipswich, MA, for the Debtor.

Edmond J. Ford, Esq., Portsmouth, NH, Ford, Weaver and McDonald, P.A., Chapter 7 Trustee.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the Notice of Amendment of Schedules C, D and F ("Notice") filed by the Debtor Renee F. LaBonte (the "Debtor") on June 14, 2005. The Notice includes a memorandum of law in support of her Notice and an affidavit of counsel for the Debtor as well as attached Exhibits. The Chapter 7 Trustee (the "Trustee") filed his objection to the Notice with a memorandum of law in support of his objection. The Debtor filed her reply to the Trustee's objection, and the Trustee

further replied to the Debtor's response. On July 19, 2005, the Court held a hearing on this matter. For the reasons set out below, the Court grants the Debtor's request to amend Schedules and overrules the Trustee's objection.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

## BACKGROUND

The Debtor filed a Chapter 7 petition with this Court on March 28, 2005. On September 19, 2002, the Debtor purchased manufactured housing on a rented lot financed by her parents in-law. The Debtor has resided in that house since then. On September 30, 2002, the Debtor and her spouse executed a promissory note in the amount of $48,500 in favor of the Debtor's in-laws. (Debtor's Ex. B.) On the same date, the Debtor and her spouse also executed a security agreement in the amount of $48,000, conveying a security interest in their manufactured home in order to secure payment of the promissory note. (Debtor's Ex. C.) There is no recorded mortgage conveying title to the Debtor's manufactured home to anyone. In Schedule A, the Debtor values her manufactured home at $55,000 subject to a purchased money lien in the amount of $47,500. In schedule D, the Debtor's father-in-law is listed as a secured creditor holding a purchase money lien of $47,500. The Debtor claims a homestead exemption to a balance of $7,500 under N.H. RSA 480 in Schedule C.

After conducting a first meeting of creditors, the Trustee filed a Report of No Distribution on May 2, 2005. When the Trustee subsequently discovered that the purchase money lien on the manufactured housing was not perfected, he withdrew his report on May 17, 2005. Later, the Trustee found that the Debtor and her spouse filed a financing statement with the New Hampshire Secretary of State regarding their manufactured home on May 18, 2005, without consulting counsel for the Debtor.

Acknowledging that the security interest was not properly perfected, the Debtor seeks to delete the claim of her in-laws from Schedule D, and instead to add it as an unsecured claim to Schedule F. The Debtor also seeks to amend Schedule C, increasing the value of the claimed exemption on her homestead to $55,000. The Trustee objects to the Debtor's proposed amendment of schedules arguing that the purchase money lien on the Debtor's manufactured housing was unperfected, thus, is subject to the Trustee's avoidance power under § 544[1] and § 549. The Trustee argues that the transfer should be recovered for the benefit of the Estate under § 550.

## DISCUSSION

Initially, the Debtor took the position that the trustee could not avoid any transfer since no transfer of interest in the manufactured housing occurred. However, at the start of the hearing, the Debtor changed her position and agreed with the Trustee in that the security agreement conveyed a security interest in the Debtor's manufactured home. But the Debtor then raised a new argument that the Debtor's homestead right was not released in the conveyance of the lien because there is no express waiver of the homestead exemption, which the Trustee contests.

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

Thus, the dispute before the Court is boiled down to one issue: whether or not the security agreement transfers security interest subject to the Debtor's homestead right.

A security interest in manufactured housing may be created through Article 9. NH RSA 477:44(IV) provides that:

> As an alternative to the method prescribed in paragraph II for mortgages of and foreclosures and executions upon manufactured hosing, security interests in manufactured housing may be created in the manner prescribed in RSA 382–A:9. Such security interest, properly perfected in the manner prescribed in RSA 382–A:9–501(a)(1) shall be entitled to priority over any other interest in such manufactured housing arising after such perfection. A person holding a security interest in manufactured housing shall have all the rights, remedies and obligations provided in RSA 382–A:9; subject, however, to homestead rights as provided in RSA 480:1. In the event such homestead rights are not waived, a secured party foreclosing upon a security interest created under this paragraph shall first pay to the debtor an amount equal to that which a person in entitled to under RSA 480:1, and the same amount to his or her spouse, if any, out of the proceeds of the sale of the manufactured housing, which payment shall extinguish all homestead rights therein. N.H.Rev.Stat. Ann. § 477:44(IV) (2001).

The language of this statute is clear that the security interest created by the security agreement under Article 9 is subject to homestead rights unless such homestead rights are waived. The parties do not dispute that the security agreement attached as Exhibit C does not contain an express waiver of the homestead exemption.

Under New Hampshire law, every person is entitled to $100,000 worth of homestead exemption. N.H.Rev.Stat. Ann. § 480:1 (Supp.2004). The homestead right is generally exempt from attachment or encumbrance, but it does not affect "mortgages which are made a charge thereon according to law." N.H.Rev.Stat. Ann. § 480:4(III) (2001). *See also In re Verdolino v. Anderson*, 12 F.Supp.2d 205 (D.N.H. 1998). A purchase money mortgage, "a mortgage made at the time of purchase to secure payment of the purchase money," is excepted from the homestead exemption even without the formalities required for the conveyance of land. N.H.Rev.Stat. Ann. § 480:5–a (2001).

The Trustee argues that the security agreement is indeed a purchase money mortgage because the lien conveyed by the Debtor is an interest in real estate. Thus, the Trustee's position is that the purchase money mortgage is enforceable against homestead exemption since an explicit waiver of the homestead exemption is not required by New Hampshire law. The Court does not agree. In review of NH RSA 477:44, it appears that the New Hampshire legislators intended to distinguish the scope of security interests in manufactured housing created by mortgages from those created by Article 9 security agreement. Moreover, the Court notes that for the purpose of collection of taxes, a mortgage is defined to include a security interest in manufactured housing created and perfected by Article 9 security agreement. N.H.Rev.Stat. Ann. § 80:18–a (Supp.2004). If the legislators intended to give the same treatment to both kinds of security interest for the purpose of the homestead right, such provisions would have been provided in Chapter 480, which governs the homestead right. But there is no such provision in Chapter 480. While the Court realizes that the results are inconsistent depending on whether a mort-

gage or a security agreement is taken to secure a debt on manufactured housing, the statute, NH RSA 477:44, is clear and the Court cannot find it creates an absurd result.

Having found that the security agreement does not transfer the Debtor's homestead right, and the value of the manufactured housing of $55,000 is well within the limit of the Debtor's homestead right, the Debtor's request to amend her schedules C, D and F is hereby granted. The Trustee's objection is overruled.

## CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.