Note.—See under (1) 22 C. J. p. 862 § 1034; anno. 53 L. R. A. 513; 10 R. C. L. p. 1171; 5 R. C. L. Supp. p. 590. (2) 4 C. J. p. 971 § 2952; 2 R. C. L. 250; 1 R. C. L. Supp. p. 476. (3) 37 C. J. p. 929 § 199; 17 R. C. L. p. 852; 3 R. C. L. Supp. p. 741; 4 R. C. L. Supp. p. 1157. (4) 37 C. J. p. 945 § 310. (5) 24 C. J. p. 746 § 1837.

---

## THOMPSON et al. v. MARLIN et al.

No. 16182—Opinion Filed Feb. 2, 1926.

1. **Homestead—Sale by Husband Alone — No Right of Action by Administrator of Wife Against Vendee for Rents During Wife's Lifetime Where Husband Survived.**

Where T. had title to a farm located in Oklahoma Territory; and he and G. T., his wife, had lived thereon, impressing it with the homestead exemption right under the Oklahoma territorial statutes; and T. conveyed title by deed prior to statehood to M., but the wife, G. T., did not join in the deed; and M. took possession of the land under the deed; and G. T., the wife, died, leaving her husband surviving, no right ever accrued to her in her lifetime to collect rents on the land from M. or his grantees: and no such right passed to her administratrix by her death.

2. **Same—Judgment Sustained.**

Record held to require an affirmance of the judgment.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Noble County; Claude Duval, Judge.

Action by George E. Thompson and Mary G. Randall, administratrix of the estate of Grace E. Thompson, deceased, against Terry Marlin, Rufus E. Bagby, Loder F. Conklin, Myrtle L. Conklin, and Dennis Christie. Judgment for defendants, and plaintiffs appeal. Affirmed.

George E. Thompson and his wife, Grace Thompson, lived on a piece of farm land in Noble county for several years occupying and using it as their homestead. In 1901 they moved away from the land and bought some lots in the town of Glencoe, in Payne county, and lived there until in 1904, when they moved back to the Noble county farm,

and lived there again for a while; and thereafter moved to and lived in the town of Morrison, in Noble county. On April 20, 1906, George E. Thompson made a deed covering the farm land, and purporting to convey title thereto to Terry Marlin, and by mesne conveyances title to the land passed to the other defendants, and Dennis Christie seems to be the last record owner. It seems that sometime in about the year 1905 Grace Thompson became insane, and spent several years in the institution at Norman, and a guardian was appointed for her because of her mental incompetency. In April, 1916, Grace Thompson, by her guardian, and George E. Thompson, brought an action against defendants for possession of the land, on the theory that the deed made by George E. Thompson, purporting to convey title to the land, was void because the land was the homestead of the Thompson family, and Grace Thompson, the wife, did not join in the deed. Upon a trial of the case in the district court the deed was held to be void, and the Thompsons were decreed to be the owners of the land, notwithstanding the deed of George E. Thompson, the husband. The defendants prosecuted appeal. The case was decided here on September 19, 1922 (Christie et al. v. Thompson et al., 88 Okla. 85, 211 Pac. 513). The opinion here reversed the judgment of the trial court, the court holding, in substance and effect, that the deed was good as against George E. Thompson, and conclusive against him in a suit brought for possession by him and his wife. In the course of the opinion the court said:

"The title to the lands should have been decreed to be in the defendant Christie, subject to the homestead right of the plaintiff, Grace Thompson."

It is pointed out in the opinion that a few days after the case was decided in the trial court, Grace Thompson died. The case was never revived in the name of her administratrix, although one was appointed to settle her estate. The court here held a revivor was not necessary, since she had **no inheritable interest** in the land. When the mandate was spread of record in the trial court, judgment was there entered in accord with the opinion. Thereupon the administratrix of the estate of Grace Thompson, deceased, by leave of the trial court, filed a pleading denominated a supplemental petition, by which the administratrix seeks to recover rents on the Noble county farm from those of the defendants, using and occupying it since possession was taken under the Thompson deed, about April 20, 1906, up until the death of Grace Thompson, February 17, 1918. The theory presented in the

supplemental petition is that since Grace Thompson never signed any deed releasing her homestead right in the land conveyed by the separate deed of the husband, she was, during all the years from the time possession of the land passed to the grantees of her husband, entitled to rents upon the land, and, the rents not having been paid to her in her lifetime, the administratrix can now maintain an action for such rents and collect them as assets passing to the estate of Grace Thompson, deceased. The trial court sustained a demurrer to the supplemental petition, from which order and judgment the administratrix of the estate of Grace Thompson, deceased, appeals.

Cress & Tebbe, for plaintiffs in error.

L. V. Orton and P. E. Rowe, for defendants in error.

Opinion by SHACKELFORD, C. The appellant presents several propositions for reversal of the judgment; but in the view we take of the case, there is but one question presented by the record which it will be necessary to examine to properly dispose of this appeal. That one question is whether or not Grace Thompson was entitled to collect rents upon the Noble county farm in her lifetime. If she was, it seems that such right would survive her death and could be enforced in a proper proceeding by her administratrix. If no such right existed in her lifetime, her death could not create the right, and the administratrix is not entitled to recover, either in the original action or in an independent action. It is to be borne in mind that George E. Thompson survived his wife, Grace Thompson, and is still living. The whole question turns upon what are the rights of the wife in the real property of the husband, which has been impressed with the homestead quality. The homestead right or privilege was unknown to the common law; and at the time George E. Thompson executed his deed and delivered possession of his farm property, on which the administratrix seeks to collect rents, the homestead privilege was a creature of the Oklahoma territorial statutes. Maloy et ux. v. Wm. Cameron & Co., 29 Okla. 763, 119 Pac. 587, and cases therein cited.

It seems that the statutes controlling were the Wilson's Revised and Annotated Statutes of 1903. Section 2986 thereof defined what constituted a homestead, and, as applicable to this case, the right existed as to 160 acres of land. Section 2985, same statutes, provided that the homestead should be exempt from attachment, execution, and every species of forced sale for the payment of debts.

From these sections it seems plain that the statutory right or privilege was created by which the head of the family could claim the homestead as exempt from any species of forced sale for debt, except as otherwise provided. The exemption could be asserted for the benefit of the family. Under the chapter, "Conveyances of Real Estate," section 883, Wilson's Statutes, it is provided that if the husband shall make any deed, mortgage, or contract relating to the homestead, without being joined therein by his wife, he shall be concluded thereby, and the same can only be avoided by the wife; and under this section the same condition obtains as to contracts of the wife relating to the homestead property, where not joined by the husband. Under section 880 of the same statutes, a deed upon the homestead is not valid as to both, unless executed by both, except as modified by the above provision. By section 1607, same statutes, it is provided "upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law." Section 1609, same statutes, provides that if the homestead has not been selected, the judge of the probate court shall cause the same to be done. This was to be done, no doubt, so that the surviving spouse could take possession of the homestead, as is provided in section 1607. Then, in section 1610, same statutes, the exemption of the homestead property is further extended to the surviving spouse to protect against seizure on any contractual liability.

It is plain from a survey of these statutory provisions that the purpose to be effected is to create for the benefit of the family a homestead privilege as against forced sale for debt; and to extend the privilege to either spouse against the contract of the other, where the homestead of the family is the subject-matter of the contract; and also to extend the exemption for the benefit of the surviving spouse, upon the death of the other. Thus, in short, the homestead right or privilege is defined and created and the exemption provided. Then, the question arises about what character of right or privilege did Grace Thompson have in the farm land of her husband, George E. Thompson? It seems to be well settled that if the homestead quality was impressed upon the land, she could have successfully maintained a claim of homestead exemption against debt, created by either herself, her husband, or both, not only before her husband's death, but also after his death, unless a mortgage or other lien was contracted thereon by

both. It seems that was the rule applied in Maloy v. Wm. Cameron & Co., supra. In that case the husband executed a mortgage covering the family homestead, but the wife did not join in the mortgage. The mortgagee brought a suit to foreclose, and the wife intervened in the action, in effect setting up her homestead exemption and her claim of exemption was allowed, the court here holding that the mortgage was good as against the husband, but subject to the wife's exemption from seizure under a mortgage debt to which she had not given assent by signing the mortgage, so long as her exemption right should exist. It seems clear that this right should exist so long as she chose to use and occupy the land as her home, up until her death, before or after her husband's death. It seems also clear that the homestead exemption right was such a right as she might have waived either by contract or by abandoning the premises as a home. In the instant case it seems that since Grace Thompson did not sign the deed to Terry Marlin, she did not waive her homestead right, her privilege of use and occupancy of the family homestead, and might have remained there; and it seems that her claim would have constituted an insurmountable obstacle to the grantee in her husband's deed taking possession. The wife, Grace Thompson, however, did not insist upon this right, and Terry Marlin took possession under the deed. Nor did she, or her guardian for her, ever insist upon the right to regain the possession of or to use the premises as her home. Whether she could have recovered the premises from Terry Marlin or his grantees at any time while her husband survived is not directly involved. It would seem, however, that if she had survived her husband, she might have repossessed herself o` the premises in a proper action brought in apt time for that purpose. But we know of no statute or court determination that would authorize her, in her lifetime, to collect rents on the land from those lawfully holding under her husband's deed, so long as her husband survived. It seems that no different situation would be presented if the husband had leased the premises for a term of years, for an agreed rental, and the rents had been paid. In such a situation could it be insisted that because the wife had a homestead exemption right in the land which she had not released, she could insist on having rents paid to her also? It would seem unreasonable that she could have insisted on any such right, yet a lease on the land given by her husband for a term of years, without her joining therein, would no more bind her, under

these statutory provisions, than her husband's deed.

It seems from a survey of the authorities generally upon the subject of homestead and exemption, that the courts have treated these and similar statutory provisions as creating an inchoate right or privilege, personal to the party in whose favor the right may be asserted. The personal privilege is created and may be asserted when the occasion arises. Where the homestead property of the family is sought to be subjected to the payment of a debt, not a lien, either or both spouses may claim the homestead as exempt from seizure. Neither spouse alone can enter into a contract which would destroy the personal privilege of the other to claim, occupy, and use the property as a home. The personal privilege is extended beyond the death of one spouse to protect the survivor in the use and occupancy as a home, and against seizure for debt, but it is not an inheritable interest in the property, and does not pass to the heirs. The personal privilege is extended to children also, in some circumstances, but not by way of inheritance, but because the statutory provisions confer the privilege. It seems that some of the authorities might justify the conclusion that where the homestead property has been designated and set out and assigned to the surviving spouse, the survivor might lease the property and collect rents without the actual occupancy of such surviving spouse; but so long as both survive, the whole spirit of the law is that the homestead right is no more than a mere personal privilege to be asserted by the one in whose favor the right is created; and is not a right, privilege, or property that passes by inheritance to the heirs of the party who might have asserted it in his or her lifetime. Until the homestead right is set out in certain specific property, the right is treated as a privilege rather than a property, and is inchoate and conditional in favor of the survivor, rather than in favor of the deceased spouse, except, of course, where the privilege is relied upon as an exemption against forcible taking for debt. The claim o` right to the homestead privilege was never asserted in the lifetime of Grace Thompson if indeed it could have been asserted by her against her husband's grantee after he took possession under her husband's deed; and after she died the personal privilege she enjoyed became extinct. It was not property which she might have leased in her lifetime, nor on which rents could be collected by her administratrix after her demise.

There is no case in the books, so far as we have been able to find, like the one here presented, and no such case has been pointed out in either the briefs or the oral argument.

In Perley v. Woodbury, 76 N. H. 23, 78 Atl. 1073, the New Hampshire court had under consideration the effect of statutory provisions creating the homestead exemption right. In the course of the opinion the court propounded this query: "What, then, is the nature of the homestead right?" In the course of the reasoning in the opinion it is indicated that the homestead right as created by statutory provisions partakes somewhat of the nature of dower, where dower obtains. The court quoted approvingly from Gunnison v. Twitchel, 38 N. H. 62, the following:

"It seems to us quite clear that the obvious purpose and necessary effect of the whole enactment is to create, for the mutual benefit of the husband, wife and minor children, where those relations exist, an inchoate right of homestead exemption * * * in every piece of real property * * * owned and occupied as a family homestead incapable of extinguishment by the sole act of the husband and father * * * contingent upon the occurrence of circumstances which may entitle the parties in whom it vests to demand its enforcement personal to them until perfected by the actual separation of the property to which it may be applied from the residue of the estate, liable to be waived or released only by the joint deed of the husband and wife, * * * but no more assignable to a third person, as an available right in his hands, until it has become vested in some specific property designated and set apart for the purpose in some proper way, than a married woman's right of dower in the lands of which her husband is or may be seized during coverture can be conveyed or assigned by her during the lifetime of her husband."

The court also quoted from Lake v. Page, 63 N. H. 318, 1 Atl. 113, the following:

"The homestead right is merely an inchoate right which is not assignable until the homestead is set out and assigned in specific property. It then becomes a vested estate. The interest of the widow in the homestead premises bears some analogy to her right of dower. * * * And, when a homestead is set off and assigned to the widow, her inchoate and imperfect right becomes a vested estate for life in the premises set off, which she may occupy as a homestead, or, if she chooses, she may sell * * * or exchange."

But the cases cited, in discussing the vested right of the party entitled to make the claim, are dealing with the rights of a widow in the property of. her deceased husband. In the case here under consideration the husband is still living, and the administratrix of the wife's estate is making the claim of right to collect rents upon the land, when any rights the wife had therein were inchoate, contingent, and imperfect, even when she was living, and when, by the authorities, there was no vested right in her. According to the reasoning in the New Hampshire case, the homestead right in its nature is somewhat like the dower right of the wife. With reference to the dower rights of the wife, the general rule is stated in Teckenbrock v. McLaughlin, 246 Mo. 711, 152 S. W. 38, in effect as follows: At common law, the inchoate right of dower is a contingent right, the value of which depends wholly upon the death of the husband. And in Bell v. Golding, 211 N. Y. 507, 105 N. E. 1081, it is said in substance and effect: An inchoate dower interest is a valuable but a contingent interest, which does not ripen into a use until the death of the husband, nor is it an interest which she may require to be assigned or admeasured. And in Overturf v. Martin, 170 Ind. 308, 84 N. E. 531: Where a wife did not join her husband in a deed to his land, she was not entitled to possession of any part of the land until his death. At common law the widow had no title, seizin, or right of entry as doweress, until assignment of dower (Johnson v. Johnson, 106 Ark. 9, 152 S. W. 1017); but amounted to a mere chose in action and not legal title (Upshaw v. Upshaw, 180 Ala. 204, 60 South. 804); but not an estate in land (Martin v. Evans, 163 Ala. 657, 50 South. 997).

Under these authorities, it seems certain that during the life of the husband the wife had no such right in his realty as doweress which she could lease or assign or collect rents from, or upon her death, during the lifetime of her husband, pass to her administratrix.

A homestead right is not an estate in land, but a mere exemption, or a right personal to the parties in whose favor it exists. Middleton v. Johnston (Tex. Civ. App.) 110 S. W. 789; Thomas v. Fulford, 117 N. C. 667, 23 S. E. 635; Fillinger v. Thomas, 64 Kan. 180, 67 Pac. 529. The primary purpose of the homestead right is to preserve a home for the protection of the family. Hannon v. Southern Pac. R. Co., 12 Cal. App. 350, 107 Pac. 335; Mills v. Stump, 20 Cal. App. 84, 128 Pac. 349. The right is no greater than the statute creates. Mansfield v. Hill, 56 Ore. 400, 108 Pac. 1007.

It seems clear, under all the authorities, that aside from the exemption privileges,

the homestead right of the wife in her husband's property, at most, can be no more than an inchoate, contingent, or prospective life estate therein, postponed until, and can never take effect until, the death of her husband; and if she dies first her death has the effect of obliterating and extinguishing all the rights conferred upon her by the statutory provisions creating the right.

It seems to us that sufficient was said in the original opinion in this case to determine the question here presented, when it is properly read and understood. In the course of the opinion (Christie v. Thompson, supra), the court said:

"Under our view of the case, the only interest Grace Thompson had in the lands was the right to use and occupy said lands as a homestead. * * * If Grace Thompson only had the right to occupy and use the lands as a homestead, and that right, being personal to her and upon her death she left no inheritable interest in said lands, it is quite obvious in this situation that the only necessary defendant in error on this appeal is her husband, George E. Thompson."

Thus, it is substantially stated that all the rights of Grace Thompson in the land of her husband were inchoate, contingent, and prospective rights, which would accrue to her upon the death of her husband; and it was not an inheritable interest, and she, having died first, such inchoate right was extinguished. Further in the opinion the court said:

"It is clear under the authority of this case" (Maloy et ux. v. Wm. Cameron & Co., supra) "that the judgment of the trial court decreeing the title to the lands in controversy to be in George E. Thompson, must be reversed. The title to the lands should have been decreed to be in the defendant Christie, subject to the homestead right of the plaintiff Grace Thompson."

The plaintiff in error seeks consolation in the last sentence of the paragraph quoted, seeming to think this expression means that the court intended to indicate that Grace Thompson's homestead right is a continuing thing and still exists. We think the court intended no such meaning. The court was merely pointing out the character of judgment and decree which should have been entered in the trial court, at a time when Grace Thompson was still living.

There is no territorial statute, and no court decision, which would justify the conclusion that Grace Thompson had such a right in the lands of her husband, after he had deeded it away, which would have supported an action against the grantee of her husband, or those holding under him, for rents upon the land at any time during her lifetime; and it is our conclusion that no such right existed; and she having no such right in her lifetime, the right could not be created by her death, and no such right passed to her administratrix. Her inchoate homestead right in the land was extinguished by her death, leaving her husband still living: and so far as she, her administratrix, or heirs were or are concerned, the title to the land is left complete in her husband's grantee and his successors.

There are several other propositions presented and argued at length in the brief of plaintiff in error, but the conclusion reached in the case renders it unnecessary to examine them. The supplemental petition does not state a cause of action in favor of the administratrix and against the defendants. The demurrer was properly sustained by the trial court.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 29 C. J. p. 785 § 7. (2) 4 C. J. p. 1129 § 3122.